Filed 6/16/14  DeHaven v. JP Morgan Chase Bank CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| BRADLEY DeHAVEN et al., | C072032 |
| Plaintiffs and Appellants, | (Super. Ct. No. SCV0030190) |
| v. | |
| JPMORGAN CHASE BANK, N.A., et al., | |
| Defendants and Respondents. | |

In March 2007 plaintiffs Bradley and Lisa DeHaven borrowed $900,000 from defendant JPMorgan Chase Bank, N.A. (Chase) to refinance their home loan.  In early 2009 the DeHavens experienced financial problems, ceased making loan payments, and applied for a loan modification.  Chase foreclosed in 2010 and the DeHavens filed suit against Chase and The Bank of New York Mellon Corporation (Mellon), alleging numerous causes of action including wrongful foreclosure, intentional misrepresentation, intentional concealment, promissory estoppel, and breach of fiduciary duty.  The DeHavens believe Chase and Mellon never intended to provide mortgage relief but

1

instead led them on while continuing to enjoy economic advantages as the servicer of a troubled asset. Chase and Mellon filed a demurrer, which the trial court sustained without leave to amend. The DeHavens appeal, contending they have sufficiently alleged facts to support their causes of action. We shall affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

**Predefault**

The DeHavens purchased their home in 2002. To take advantage of lower interest rates, they decided to refinance. In 2007 the DeHavens borrowed $900,000 from Chase.

A deed of trust was recorded in March 2007, naming Chase as the lender and Financial Title Company as trustee. The deed of trust provided that the loan could be sold. In 2007 Chase pooled the loan into a securitized trust; Mellon was the trustee of the trust. Chase remained the loan servicer under the trust's pooling and servicing agreement (PSA).

The DeHavens made all their mortgage payments until early in 2009, when they began to experience financial problems. In January 2009 Bradley DeHaven called Chase to request a payment reduction; he told the Chase representative that they had never before missed a mortgage payment and wanted to work something out so they could keep their home.

The Chase representative would not discuss any relief or reduction options with Bradley DeHaven at that time but told him that if the DeHavens missed three consecutive months' payments, "only then could Chase consider or discuss a modification." The representative stated, " 'we can't talk about loan modification until you miss three mortgage payments,' " and other Chase employees reiterated that Chase would not discuss any mortgage payment relief, reduction, or loan modification with the DeHavens until they defaulted on three mortgage payments. Chase told the DeHavens that as the loan servicer it had the authority to modify the loan.

**Postdefault**

In February 2009 the DeHavens stopped making loan payments and began compiling and submitting the information requested by Chase for a loan modification. In April 2009, after missing three monthly mortgage payments, the DeHavens contacted Chase to inquire about their loan modification application. Over the next two months, the DeHavens contacted Chase on numerous occasions, inquiring about the modification application. Chase confirmed their loan was under review for a modification. Chase also stated it would not foreclose during the review.

On May 19, 2009, defendant First American Title Insurance Company (First American), as agent for the current beneficiary, recorded a notice of default. In June 2009 Bradley DeHaven contacted Chase to inquire about the status of their loan application. Chase told DeHaven that the application was under review and no foreclosure would take place during the process.

The DeHavens resubmitted documents requested by Chase for the loan modification in May and June 2009. In June and July 2009 the DeHavens again contacted Chase to confirm that their loan was being reviewed for modification and that no foreclosure would occur while the loan was under modification review. In June and July 2009 the DeHavens again inquired about their modification and Chase stated they were under review.

First American recorded a notice of trustee's sale on August 26, 2009, with a sale date of September 11, 2009. In August 2009 the DeHavens sought the assistance of Financial Hope for America (Hope), a foreclosure relief service, in obtaining a loan modification from Chase. With the help of Hope, in September 2009 the DeHavens again submitted the documents requested by Chase in connection with their loan modification application. Chase delayed the September foreclosure sale.

The following month, Bradley DeHaven informed Chase that he should be contacted concerning the status of the DeHavens' loan. Chase agreed to contact the DeHavens directly regarding the modification application.

In November 2009 Hope contacted Chase, which informed Hope the DeHavens' loan modification was being reviewed, the process would take an additional 90 to 120 days, and no sale would occur while the modification was under review. In another conversation, Chase told Hope the DeHavens' application was under review and no further information was needed. Hope made numerous follow-up calls on the DeHavens' application.

Hope contacted Chase in January 2010 and was informed the application was still under review, no trustee's sale would occur, and Chase would not foreclose as long as the loan modification request was under review. The following month, the DeHavens again submitted all of the documents requested by Chase for the loan modification.

Also in February 2010 the DeHavens began to consider the efficacy of bankruptcy. They believed filing for bankruptcy would make them better candidates for loan modification by discharging the junior loan on the property and eliminating other unsecured debt. The DeHavens informed Chase of their plans.

On March 3, 2010, Hope called Chase and was informed the DeHavens' application was no longer under review. Chase told Hope it had offered the DeHavens a loan modification in October 2009, which the DeHavens had refused. Although Hope left the DeHavens a voice mail message the same day, Hope did not inform them about the substance of the conversation with Chase.

According to the DeHavens, Chase never offered them a loan modification in October 2009. Nor did Chase inform them, prior to the trustee's sale of the property in April 2010, that their application was no longer under review. Between August 2009 and April 2010 Bradley DeHaven spoke with Chase several times a month. During these conversations, Chase confirmed that the foreclosure on the property was suspended and

4

the modification application was still under review. Chase repeatedly stated it would notify the DeHavens of any change in the status of their loan or their modification application.

The foreclosure sale of the DeHavens' property took place on April 14, 2010. On April 17, 2010, the DeHavens found a notice on their front door informing them that their home had been sold and Chase was now the owner. On May 4, 2010, Chase sent a letter to the DeHavens stating their modification was in active review and thanking them for their patience. The following day, Chase issued a three-day notice to quit and filed an unlawful detainer action on May 17, 2010.

The DeHavens "began working with Chase again on their own" in July 2010 and submitted a new modification application. On July 22, 2010, the DeHavens spoke with Chase representative Sabrina Pipkin, who stated Chase would reverse the foreclosure and reopen the case.

While Pipkin was on vacation in August 2010, another Chase representative closed the account. The same day, the DeHavens received a letter from Chase stating their home loan modification application had been denied for lack of adequate documentation.

In November 2010, after consulting again with Chase, the DeHavens resubmitted all the documents required to reverse foreclosure and obtain a loan modification. In January 2011 Chase informed the DeHavens that their loan no longer existed due to the sale of the property.

**Federal Complaint**

In November 2010 the DeHavens filed suit in federal court. In their original complaint, the DeHavens acknowledged that Chase told them in March 2010 that it had stopped reviewing their modification application. However, in their first amended federal complaint, the DeHavens alleged that Hope had instructed them to refrain from any direct contact with Chase: "Hope . . . told [Bradley DeHaven] not to contact Chase

5

directly as it would hurt their chances for a modification if they said anything contrary to their negotiations, so [the DeHavens] were completely blindsided by the foreclosure." The amended complaint alleged no direct communication with Chase after the DeHavens retained Hope.

Chase filed a motion to dismiss the first amended complaint, arguing Hope's knowledge that Chase had concluded its modification review was imputed to the DeHavens. The DeHavens filed a second amended complaint, naming Hope as a defendant on a new breach of fiduciary duty claim. The DeHavens deleted their allegation that Hope instructed them not to contact Chase. Instead, the second amended federal complaint alleges: "Although [the DeHavens] authorized . . . Hope . . . to work on their behalf and discuss the Subject Loan with Chase, [the DeHavens] clearly communicated to Chase in or around October of 2009 that [the DeHavens] wished to be contacted directly regarding any changes to or developments concerning the status of the Subject Loan." The federal court dismissed the case in October 2011 for lack of subject matter jurisdiction.

**Current Litigation**

The DeHavens filed their original complaint in state court in November 2011. Their first amended complaint, filed in April 2012, alleges causes of action for wrongful foreclosure, violation of Civil Code section 2934a, intentional misrepresentation and false promise, intentional concealment, constructive fraud, negligent misrepresentation, promissory estoppel, violation of Business and Professions Code section 17200, and breach of fiduciary duty.

The original complaint alleges: "Although [the DeHavens] authorized . . . Hope . . . to work on their behalf and discuss the Subject Loan with Chase, [the DeHavens] clearly communicated to Chase in or around October of 2009 that [the DeHavens] wished to be contacted directly regarding any changes to or developments concerning the status of the Subject Loan. Plaintiff Bradley DeHaven specifically

6

inquired with the Chase representative he spoke with in or around October of 2009 if Chase would still keep [the DeHavens] 'in the loop' regarding the Subject Loan even though he was authorizing . . . Hope . . . to communicate with Chase through a power of attorney. The lady that Plaintiff Bradley DeHaven spoke with assured him that Chase would still communicate directly with [the DeHavens] regarding the Subject Loan, but that the power of attorney simply allowed Chase also to talk with . . . Hope . . . about [the DeHavens'] case."

Following a demurrer by defendants, the DeHavens filed a first amended complaint. In their amended complaint, the DeHavens alleged that they themselves directly contacted Chase from October 2009 through April 2010. Defendants again demurred. The trial court sustained the demurrer without leave to amend. Following entry of judgment, the DeHavens filed a timely notice of appeal.

## DISCUSSION

### Standard of Review

The function of a demurrer is to test the sufficiency of the complaint by raising questions of law. We give the complaint a reasonable interpretation and read it as a whole with its parts considered in their context. A general demurrer admits the truth of all material factual allegations. We are not concerned with the plaintiff's ability to prove the allegations or with any possible difficulties in making such proof. We are not bound by the construction placed by the trial court on the pleadings; instead, we make our own independent judgment. (*Herman v. Los Angeles County Metropolitan Transportation Authority* (1999) 71 Cal.App.4th 819, 824.)

Where the trial court sustains the demurrer without leave to amend, we must decide whether there is a reasonable probability the plaintiff can cure the defect with an amendment. If we find that an amendment could cure the defect, we must find the court abused its discretion and reverse. If not, the court has not abused its discretion. The

7

plaintiff bears the burden of proving an amendment would cure the defect. (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153 (*Gomes*).)

In addition, a plaintiff cannot avoid a demurrer by pleading facts or positions in an amended complaint that contradict facts pleaded in the original complaint, or by suppressing facts that prove the pleaded facts false. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877.) "[W]hen a complaint contains allegations that are fatal to a cause of action, a plaintiff cannot avoid those defects simply by filing an amended complaint that omits the problematic facts or pleads facts inconsistent with those alleged earlier. [Citations.] Absent an explanation for the inconsistency, a court will read the original defect into the amended complaint, rendering it vulnerable to demurrer again." (*Banis Restaurant Design, Inc. v. Serrano* (2005) 134 Cal.App.4th 1035, 1044.)

### Tender

Chase contends the DeHavens must tender the amount they owed under the deed of trust in order to state a claim for wrongful foreclosure. The trial court agreed, finding as to each cause of action that the DeHavens failed to allege the ability to tender and failed to sufficiently allege an exception to the tender requirement.

As a general rule, a homeowner in default must first tender payment of the obligation in full to achieve standing to challenge nonjudicial foreclosure proceedings. (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112 (*Lona*).) The tender rules are strictly applied and it is a debtor's obligation to make an unambiguous tender of the entire amount of the debt. (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 445-446.)

However, the tender rule does not apply if the sale is void. Since the tender rule is an equitable doctrine, when a trustee sale is void tender need not be alleged because the action is not based in equity. (*Lona*, *supra*, 202 Cal.App.4th at p. 113.) Therefore, we must first ascertain whether the sale of the DeHavens' home was void. If so, tender is not required.

8

## Wrongful Foreclosure

In their first cause of action for wrongful foreclosure, the DeHavens cite Civil Code section 2924 and allege that neither Chase, nor Mellon, nor First American possessed the authority to foreclose on their property. Although their argument is convoluted, they appear to contend that at the time the property was sold, First American was not the beneficiary under the deed of trust, since the substitution of trustee was not recorded until over a month after the notice of default was recorded. In addition, the DeHavens allege that First American attempted to substitute itself as trustee and therefore was not an authorized agent of the holder of the note or beneficiary under the deed of trust. Because of these irregularities, the DeHavens assert that the notice of default upon which the sale proceeded was in violation of section 2924 and therefore void.

Respondents disagree, pointing out that Chase originated the loan and pooled it into a securitized trust with Mellon as trustee. Chase remained the servicer throughout the life of the loan and was the trust's agent pursuant to the trust's PSA, which authorized the servicer, on behalf of the trustee, to foreclose on loans in default. As to the DeHavens' arguments regarding the failure to timely record the substitution of trustees and the allegedly improper effort by First American to substitute itself as trustee, respondents argue the DeHavens mistakenly attempt to apply the recording provisions of Civil Code section 2932.5 to the deed of trust when the statute only applies to mortgages. Respondents assert the DeHavens are similarly confused in asserting before the trial court that the trust had terminated and mistaken about who has the authority to file a notice of default. Respondents point out that a notice of default may be recorded by the trustee, beneficiary, or any of their authorized agents and that an agent's authority to initiate the foreclosure process is not subject to judicial challenge.

Regrettably, we do not have the benefit of the DeHavens' response to these legal arguments as they are not addressed in their reply brief. In any event, the arguments are compelling.

9

Civil Code sections 2924 through 2924k, which set forth California's nonjudicial foreclosure scheme, " 'provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust.' [Citation.] 'These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.' [Citation.] 'The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.' [Citation.] 'Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute.' [Citations.]" (*Gomes*, *supra*, 192 Cal.App.4th at p. 1154; see *Lane v. Vitek Real Estate Indus. Group* (2010) 713 F.Supp.2d 1092, 1098.)

Addressing defaults, Civil Code section 2924, subdivision (a)(1) provides that the "trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default."

Numerous courts have rejected challenges to the propriety of the foreclosure process by the foreclosed-upon homeowners, holding that the homeowners did not have standing to challenge a vast array of irregularities in the transfer of rights and obligations under assignments and substitutions. (*Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 82; *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 511 (*Jenkins*).) "California's nonjudicial foreclosure scheme does not 'provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized.' *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1155, 121 Cal. Rptr. 3d 819 (2011)." (*Diunugala v. JP Morgan Chase Bank, N.A.* (S.D. Cal., Oct. 3, 2013, No. 12cv2106-WQH-NLS) 2013 U.S.Dist.

10

Lexis 144326 at p. *20.) In *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, the homeowners alleged a defect in the assignment of the deed of trust. The homeowners did not claim the lender committed misconduct in foreclosing on the property and admitted they were in default. The appellate court rejected the challenge, reasoning: "Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note." (*Id.* at p. 1507.)

The court in *Jenkins, supra*, 216 Cal.App.4th 497 reached a similar result, rejecting a homeowner's challenge to a foreclosure based on an improper transfer of the promissory note. The court found the homeowner's obligations under the note remained the same, even if subsequent assignments were invalid. The court reasoned: "California courts have refused to delay the nonjudicial foreclosure process by allowing trustor-debtors to pursue preemptive judicial actions to challenge the right, power, and authority of a foreclosing 'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure." (*Id.* at p. 511.) In *Gomes, supra*, 192 Cal.App.4th at p. 1155, the court found Civil Code section 2924, subdivision (a) does not provide for a judicial action to determine whether the person initiating the foreclosure process is authorized.

Here, the DeHavens acknowledge they had ceased to make their loan payments. They do not allege that the assignments they complain of interfered with their ability to repay the loan. Although the DeHavens present a litany of alleged damages, they fail to connect those damages to the alleged irregularities in the processing of the loan. In addition, the DeHavens were not excused from failing to allege a tender, and this failure also dooms their cause of action. The DeHavens' wrongful foreclosure cause of action based on alleged defects in the transfer of the underlying note lacks merit and was properly dismissed without leave to amend.

11

**Violation of Civil Code Section 2934a**

The DeHavens' second cause of action alleges that the June 2009 substitution of trustee was invalid under Civil Code section 2934a since the beneficiary did not sign the document.  However, section 2934a does not prohibit a beneficiary's agent from executing the substitution on the beneficiary's behalf.  In *Aceves v. U.S. Bank N.A.* (2011) 192 Cal.App.4th 218, 232 (*Aceves*), the court found section 2934a does not preclude an attorney-in-fact from signing a substitution of trustee.  Therefore, the trial court properly dismissed the second cause of action without leave to amend.

**Intentional Misrepresentation and False Promise**

The DeHavens' third cause of action for intentional misrepresentation alleges Chase made misrepresentations to induce them to default and made further misrepresentations following the default.  The former refers to Chase's statements that it would consider modification if they defaulted on three mortgage payments.  The latter refers to Chase's statements that it would not foreclose while their loan modification application was under review.

The elements of fraud that give rise to a cause of action for deceit are (1) the defendant made a false representation as to a material fact; (2) the defendant knew the representation was false when made; (3) in making the representation, the defendant intended to deceive; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered resulting damages.  (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 792.)  Fraud must be pleaded with specificity rather than with general and conclusory allegations.  A plaintiff must allege facts showing how, when, where, to whom, and by what means the alleged representations were made.  In the case of a corporate defendant, the plaintiff must allege the names of the persons making the representations, their authority to speak for the corporation, to whom they spoke, the content of the communication, and when the representation was made.  (*Id.* at p. 793.)

12

*Predefault Misrepresentations*

The DeHavens allege Chase representatives told them that if they missed three consecutive mortgage payments, only then could Chase consider or discuss a loan modification. The court in *Roussel v. Wells Fargo Bank* (N.D. Cal., Jan. 14, 2013, No. C 12-04057 CRB) 2013 U.S.Dist. Lexis 5427 (*Roussel*) rejected an almost identical claim by a borrower against a lender. The borrower alleged the lender made a false representation when it instructed the borrower to default on his loan in order to receive loan assistance. The court found, "[a]s an initial matter, the [second amended complaint] states only that 'Wells told Plaintiff that it was unable to offer Plaintiff any loan workout options because Plaintiff was current on his mortgage payment,['] [citation], not that Defendant 'instructed' Plaintiff to default, but even so, Plaintiff does not explain what about the representation/instruction was false. Did Defendant in fact offer loan workout options to borrowers who were current on their mortgages? Plaintiff does not allege that. Did Defendant tell Plaintiff that if he defaulted, then he would be given a modification? Plaintiff does not allege that either. As the Court held . . . , 'Defendant arguably did exactly what it told Plaintiff; after Plaintiff became delinquent, Defendant processed Plaintiff's loan modification application. Plaintiff's application was denied, but Defendant never guaranteed a loan modification in the first place.' [Citation.]" (*Id.* at pp. *18-19.)

We agree with *Roussel's* analysis. Chase told the DeHavens they could not discuss any loan modification options until they had missed three consecutive months' payments. The DeHavens do not allege Chase instructed them to default or represented that a modification was feasible. All Chase did was to inform the DeHavens about the prerequisites necessary to be considered for a modification. The DeHavens fail to establish that the predefault statements by Chase were false.

13

*Postdefault Misrepresentations*

Following their default, the DeHavens allege Chase falsely stated that it would not foreclose on the property while their modification application was under review, misrepresented that the loan was under review between August 2009 and April 2010, and misrepresented that Chase would reopen its file for further consideration in July 2010. Each of these allegations is deficient and the court appropriately sustained Chase's demurrer without leave to amend.

Although the DeHavens contend Chase misrepresented that it would not foreclose while their modification application was under review, their own allegations belie this claim. The DeHavens' complaint states that Chase reviewed their multiple applications for a loan modification for over a year. On March 3, 2010, Chase informed Hope's Luis Ibanez, who was representing the DeHavens, that their file was no longer under review. The foreclosure took place on April 14, 2010.

The DeHavens also allege that Chase falsely informed them their loan was in review on multiple occasions between August 2009 and April 2010. However, they provide no specific facts that establish Chase was not reviewing their application prior to the foreclosure. Nor do they allege they negotiated a modification with Chase. Instead, the heart of the DeHavens' misrepresentation claims is their contention that Chase did not offer them a modification. Chase's failure to offer a modification does not constitute fraud. Lenders are not compelled to determine a borrower's ability to repay a loan, nor are they required to modify a loan even in the shadow of foreclosure. (*Perlas v. GMAC Mortgage, LLC* (2010) 187 Cal.App.4th 429, 436 (*Perlas*).)

The trial court duly noted these deficiencies and found the DeHavens failed to adequately allege facts sufficient to demonstrate deceitful conduct, intent to deceive, or reliance on any representations made by Chase. In addition, the court commented, "there are insufficient facts that allege the defendants actively participated and exceeded their scope 'beyond the domain of the usual money lender.' [Citation.]"

14

The DeHavens take issue with this final comment, arguing under *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872 (*Jolley*) that courts no longer rely on the general rule that lending institutions do not owe a duty of care to borrowers. Instead, the DeHavens argue, *Jolley* requires the trial court to apply the factors enunciated in *Biakanja v. Irving* (1958) 49 Cal.2d 647 (*Biakanja*) to cases involving lenders and borrowers in order to ascertain whether the lender owes a duty of care to the borrower.[1] We disagree.

*Jolley* considered summary judgment against the borrower of a construction loan. The original lender lost the lender's documents, made false representations about the amount of reimbursement under the loan, and failed to make the promised disbursements. As a result, construction suffered delays. The bank that subsequently took over the original lender made representations that it was highly probable the borrower's construction loan would be modified to stave off foreclosure. The bank also told the borrower it was likely that when the construction loan was complete, the borrower could roll the construction loan into a fully amortized conventional loan. The borrower, relying on the bank's representations, borrowed heavily to finish the project. However, construction delays during the loan modification negotiations prevented him from selling the property before the housing market collapsed. Subsequently, the bank foreclosed and the borrower filed suit. The trial court granted summary judgment in favor of the defendants; the appellate court reversed. (*Jolley*, *supra*, 213 Cal.App.4th at pp. 878-881, 906.)

---

[1] *Jolley* sets out the *Biakanja* factors: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." (*Jolley*, *supra*, 213 Cal.App.4th at p. 899.)

15

In reversing, the *Jolley* court found triable issues of fact as to whether the defendants owed the plaintiff a duty of care. The court acknowledged that, as a general rule, a financial institution owes no duty of care to borrowers in a loan transaction that does not exceed the scope of its conventional role as a lender. (*Jolley*, *supra*, 213 Cal.App.4th at p. 898.) However, *Jolley* considered contemporary circumstances and noted: "We live, however, in a world dramatically rocked in the past few years by lending practices perhaps too much colored by shortsighted self-interest. We have experienced not only an alarming surge in the number of bank failures, but the collapse of the housing market, an avalanche of foreclosures, and related costs borne by all of society. There is, to be sure, blame enough to go around. And the banks are hardly to be excluded." (*Id.* at p. 902.) The court considered recent legislative and judicial efforts aimed at mitigating some of the damage done by the housing collapse, including dual tracking, the practice of promising loan modification while pursuing foreclosure. The court concluded these measures "indicate that courts should not rely mechanically on the 'general rule' that lenders owe no duty of care to their borrowers." (*Id.* at p. 903.)

The court in *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49 distinguished *Jolley*. The court concluded: "[A] loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money. A lender's obligations to offer, consider, or approve loan modifications and to explore foreclosure alternatives are created solely by the loan documents, statutes, regulations, and relevant directives and announcements from the United States Department of the Treasury, Fannie Mae, and other governmental . . . agencies. The *Biakanja* factors do not support imposition of a common law duty to offer or approve a loan modification. If the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, would not be closely connected to the lender's conduct. If the lender did not place the borrower in a position creating a need for a loan modification, then no

16

moral blame would be attached to the lender's conduct." (*Lueras*, *supra*, 221 Cal.App.4th at p. 67.)

We also find the present case distinguishable. The DeHavens allege Chase misrepresented that their residential loan modification was under review. They do not allege the type of misleading, specific representations the court in *Jolley* found actionable.

### Fraud and Deceit/Intentional Concealment

The DeHavens also allege intentional concealment under Civil Code section 1710, which includes "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." The duty to disclose exists " ' "(1) when the defendant is in a fiduciary relationship with the plaintiff; [fn. omitted] (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts. [Citation.]" [Citation.]' " (*Bank of America Corp. v. Superior Court* (2011) 198 Cal.App.4th 862, 870-871.)

The deceitful conduct the DeHavens allege again concerns Chase's failure to disclose its intent to sell the property while "lulling them into the belief" that Chase would not foreclose. They also allege Chase "receives certain economic advantages as servicer of a troubled loan which kick in at such time as the loan becomes three months or more in arrears." Finally, they label as deceitful Chase's concealment that the modification was no longer under review because the DeHavens refused a modification offer in October 2009.

However, none of these allegations provides specific facts that support a cause of action for fraudulent concealment. The DeHavens knew of the notice of default and sale, and had not made any payments for more than a year. Chase informed Hope prior to foreclosure that it had ended its modification review of the DeHavens' loan. As for

17

Chase's economic advantages in handling troubled loans, the DeHavens fail to specify why this amounts to fraudulent concealment or how it damaged them. As discussed previously, Chase informed Hope in October that the loan was no longer under review. The amended complaint fails to allege fraudulent concealment.

## Constructive Fraud

In support of their cause of action for constructive fraud, the DeHavens simply reiterate their labyrinth of allegations regarding foreclosure, modification, and Chase's "economic advantages" as the servicer of a troubled loan. The trial court found these allegations insufficient and we agree.

Constructive fraud requires that the defendant have a fiduciary duty to disclose information to the plaintiff. (*Younan v. Equifax Inc.* (1980) 111 Cal.App.3d 498, 516-517.) The DeHavens do not allege that Chase was in a fiduciary relationship requiring such disclosure. Indeed, a commercial lender is allowed to pursue its own economic interests and may assert its contractual rights. Absent special circumstances, a loan transaction is an arm's-length transaction and does not constitute a fiduciary relationship between borrower and lender. (*Sierra-Bay Fed. Land Bank Assn. v. Superior Court* (1991) 227 Cal.App.3d 318, 334-335; *Perlas, supra*, 187 Cal.App.4th at p. 436.) The DeHavens fail to provide facts sufficient to support their cause of action for constructive fraud.

## Negligent Misrepresentation

The amended complaint alleges Chase breached its duty of care not to make representations it had no reasonable ground to believe to be true. The DeHavens argue they have pleaded facts in support of their cause of action for negligent misrepresentation.

To establish negligent misrepresentation a plaintiff must allege facts that establish the defendant owed a duty to communicate accurate information. (*Friedman v. Merck & Co.* (2003) 107 Cal.App.4th 454, 477.) As discussed, *ante*, a financial institution does

18

not owe a duty of care to a borrower when the actions complained of do not exceed the scope of its conventional role as a lender of money. The DeHavens have not established Chase made negligent misrepresentations.

## Promissory Estoppel

The DeHavens argue Chase made clear and unambiguous promises to them: Chase promised it would not foreclose on their home during the modification process and promised to review the DeHavens' application for a loan modification in good faith. According to the DeHavens, under *Aceves*, *supra*, 192 Cal.App.4th 218, they have adequately pleaded a cause of action for promissory estoppel.

To establish promissory estoppel, the plaintiff must plead an unambiguous promise, reasonable and foreseeable reliance, and detriment resulting from reliance. (*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 901.) Promissory estoppel applies when a promise that the defendant should reasonably expect to induce action or forebearance on the part of the plaintiff does induce action or forebearance, and would result in an injustice if the promise were not enforced. However, a mere hopeful expectation cannot be equated with justifiable reliance. (*Aceves*, *supra*, 192 Cal.App.4th at p. 227.) Estoppel cannot be established from preliminary discussions and negotiations. (*Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031, 1044.)

In *Aceves*, the defendant bank agreed to work with the plaintiff borrower " 'on a mortgage reinstatement and loan modification' " if the borrower no longer pursued relief in bankruptcy court. The appellate court found this constituted a clear and unambiguous promise: "It indicates that U.S. Bank would not foreclose on Aceves's home without first engaging in negotiations with her to reinstate and modify the loan on mutually agreeable terms." (*Aceves*, *supra*, 192 Cal.App.4th at p. 226.) The borrower relied on the bank's promise by declining to convert her chapter 7 bankruptcy to a chapter 13 bankruptcy, by not developing a chapter 13 plan, and by not opposing the bank's motion to lift the bankruptcy stay. (*Aceves*, at p. 227.) The court found the borrower's reliance on the

19

bank's promise reasonable, and therefore she had stated a cause of action for promissory estoppel. (*Id*. at pp. 227-232.)

No such unambiguous promise or reasonable reliance appears in the present case. The DeHavens do not allege that Chase offered them a loan modification or discussed whether or not the couple should pursue a bankruptcy remedy. Instead, the DeHavens allege they relied on Chase's promise not to foreclose on their home during the foreclosure process and promised to review their modification request in good faith. The court correctly found such allegations did not support a cause of action for promissory estoppel.

## Business and Professions Code Section 17200

Finally, the DeHavens contend they have adequately presented a cause of action for violation of Business and Professions Code section 17200. The trial court disagreed, finding the DeHavens failed to sufficiently allege unfair, unlawful, or fraudulent business practices or activities to support the cause of action.

To state a claim under Business and Professions Code section 17200, a plaintiff must allege facts demonstrating that a particular practice by the defendant violated a specific underlying law. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.) In addition, the plaintiff must allege a financial or property loss as a result of the unlawful acts. "A plaintiff fails to satisfy the causation prong of the statute if he or she would have suffered 'the same harm whether or not a defendant complied with the law.' [Citation.]" (*Jenkins*, *supra*, 216 Cal.App.4th at p. 522.)

In support of their claim, the DeHavens incorporated all the allegations set forth elsewhere in their amended complaint. However, we have found none of the causes of action cited sufficient to survive demurrer. Where a Business and Professions Code section 17200 claim is based on facts supporting other causes of action that have been found wanting, it is appropriate to also dismiss the underlying section 17200 claim.

20

(*Keen v. American Home Mortgage Servicing, Inc.* (E.D.Cal. 2009) 664 F.Supp.2d 1086, 1102.)  Accordingly, the trial court properly dismissed the cause of action for violation of section 17200.

## DISPOSITION

The judgment is affirmed.

                                        RAYE                , P. J.


We concur:


        BLEASE         , J.


        HULL           , J.